IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN (WATERLOO) DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 18-CR-2034 |
| Plaintiff, | **INFORMATION** |
| vs. | Count 1 |
| | 18 U.S.C. § 1343: Wire Fraud |
| RANDY CONSTANT, | |
| | 18 U.S.C. § 981(a)(1)(C) |
| Defendant. | Forfeiture Allegation |

The United States Attorney charges:

## Count 1

## Wire Fraud

1.  At all times relevant to this Information:

    a.  Individuals or entities wanting to produce or handle certified organic grain in the United States were required to obtain certifications through the United States Department of Agriculture's National Organic Program (NOP). In accordance with applicable regulations, NOP accredited third party certifiers. The certifiers then certified operations or farmers as being eligible to produce organic grain themselves or to handle organic grain produced by others.

    b.  In order for grain to be certified as organic, the grain must have been grown through approved methods and without the use of certain substances, including synthetic chemicals, and produced and handled in compliance with the

NOP. This would include an organic plan agreed to by the producer or handler of such grain and approved by the third party certifier.

  c. Defendant owned and operated Organic Land Management (OLM). OLM and defendant himself held certifications as organic producers (primarily for corn and soybeans) on certified organic farms in Nebraska and Missouri.

  d. Defendant also co-owned and operated Jericho Solutions of Missouri, Inc. a/k/a Jericho Solutions (Jericho), which operated primarily out of Ossian, Iowa, in the Northern District of Iowa. Jericho was in the business of selling and marketing grain labeled as organic to customers nationwide.

  e. OLM and defendant sold their certified organic grain to Jericho as well as directly to third party purchasers.

## The Scheme to Defraud

2. Beginning no later than about 2008, and continuing through at least about 2017, in the Northern District of Iowa and elsewhere, defendant and others known and unknown to the United States Attorney's Office intentionally devised or made up a scheme to defraud others out of money, participated in a scheme to defraud with knowledge of its fraudulent nature, and devised or participated in a scheme to obtain money by means of material false representations or promises. In particular, defendant fraudulently represented or caused fraudulent representations to customers that grain being sold was certified organic because it had been grown as part of either his or OLM's certified organic farms in Nebraska

2
Case 6:18-cr-02034-CJW-MAR   Document 2   Filed 12/19/18   Page 2 of 11

or Missouri. In truth and fact and as defendant then well knew, at least 90% of the grain being sold was actually either entirely non-organic or a mix of organic grain and non-organic grain. In the course of the scheme to defraud, from 2010 to 2017 alone, defendant sold or caused the sale of more than $140 million in grain labeled and marketed as organic, and the vast majority of those sales were fraudulent.

### Execution of the Scheme to Defraud

3. The scheme and artifice to defraud and obtain money by false pretenses was carried out, in part, as follows:

4. It was part of the scheme to defraud that defendant or his affiliates grew certified organic crops (primarily corn and soybeans but also wheat) in Missouri and Nebraska under either defendant's certification or OLM's certification. Growing some certified-organic crops allowed defendant or affiliated entities to provide certifications or representations to customers that grain being purchased came from those operations and was therefore organic when, in truth and fact and as defendant then well knew, the vast majority of the grain sold by the defendant was either non-organic or contained a mixture of organic and non-organic grain. For the years 2010 to 2017, defendant or OLM held certifications to grow organic soybeans and corn in the following amounts:

|  | **Nebraska** (certified acres) | **Missouri** (certified acres) |
|---|---|---|
| 2010 | Corn: 1458.2<br>Soybeans: 667.8 | Soybeans: 333.9 |
| 2011 | Corn: 667.8<br>Soybeans: 1458.5 | Corn: 333.9 |
| 2012 | Corn: 1407.6<br>Soybeans: 667.8 | Soybeans: 333.9 |
| 2013 | Corn: 1335.5<br>Soybeans: 749.9 | Corn: 155.1<br>Soybeans: 178.8 |
| 2014 | Corn: 978.4<br>Soybeans: 971.3 | Corn: 178.8<br>Soybeans: 190.8 |
| 2015 | Corn: 1131.85<br>Soybeans: 371.8 | Corn: 190.8<br>Soybeans: 288.4 |
| 2016 | Corn: 1227.65<br>Soybeans: 371.8 | Corn: 124.93<br>Soybeans: 1196.95 |
| 2017 | Certification Surrendered June 5, 2017 | Certification Surrendered June 5, 2017 |

5. It was part of the scheme to defraud that defendant grew non-organic grain and purchased millions of dollars in non-organic grain from farmers throughout Nebraska and Missouri. Defendant purchased non-organic grain for agreed-upon prices or, on other occasions, based the price paid to the farmer on the amount defendant or one of this entities was able to get for the fraudulently marketed grain.

6. It was part of the scheme to defraud that defendant represented or caused representations to customers that grain being sold was certified organic because either he or OLM had grown the grain being sold. In truth and fact and as defendant then well knew, at least 90% of the grain being sold was either entirely non-organic or a mix of organic and non-organic grain that he either grew himself or purchased from other farmers. Since at least 2004, at least 90% of the grain sold by

4

defendant, OLM, or Jericho was non-organic either because the grain was non-organic grain or because the grain was organically grown but was then commingled with non-organic grain, thereby depriving the grain of its organic character.

7. It was part of the scheme to defraud that defendant sold or caused the sale of a significant amount of non-organic grain that was fraudulently marketed as organic. For the years 2010 to 2017, the scheme's fraudulent sales of falsely marketed organic grain exceeded $140 million in gross sales and involved at least 10 customers nationwide. Defendant's gross sales per year were, at a minimum, as follows:

| | |
|---|---|
| **2010** | $16,508,569 |
| **2011** | $15,488,351 |
| **2012** | $15,823,581 |
| **2013** | $19,290,379 |
| **2014** | $22,086,648 |
| **2015** | $24,421,435 |
| **2016** | $19,104,946 |
| **2017** | $9,709,564 |
| | **$142,433,475** |

8. It was also part of the scheme to defraud that defendant's co-schemers would on at least some of defendant's certified organic fields apply unapproved substances, including pesticides and nitrogen, which rendered the grain produced from these fields to be non-organic. Defendant knew that defendant's co-schemers

would apply unapproved substances to grain that he would then fraudulently market and sell as organic.

## The Wire

9. For the purpose of executing and attempting to execute the scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations, and promises, defendant caused to be transmitted by means of wire communication in interstate commerce signals to effectuate the transfer of funds from accounts held by purchasers of grain that he fraudulently marketed and sold as organic to his personal account or the accounts of affiliated entities. Specifically, on February 10, 2017, defendant knowingly and fraudulently caused a Jericho customer to send a payment of $419,417.50 from its account in Sonora, California, via wire transfer to Jericho's bank account in Luana, Iowa, in the Northern District of Iowa, for the purpose of paying for grain that was falsely marketed as organic.

10. This was in violation of Title 18, United States Code, Section 1343.

## Forfeiture Allegation

11. The allegations contained in Count 1 of this information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

12. Upon conviction of the offense in violation of 18 U.S.C. § 1343 set forth in Count 1 of this information, defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or

personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes, but is not limited to, $128,190,128, and defendant's interests in the following pieces of machinery or equipment:

1. 2006 Peterbilt 379 semi truck, VIN #1XP5DB9X66D889473;

2. 2015 Ford F-350 super-duty pickup, VIN #1FT8W3DTXFEB78940;

3. 2011 Ford F-350 super-duty pickup, VIN #1FT8W3BT7BEC10918;

4. 2010 Ford F-150 pickup, VIN #1FTFW1EV8AFB53694;

5. John Deere Model 4730 Hicycle Self-Propelled Sprayer, Serial #N04730X008425;

6. John Deere Model 8430 Row Crop 250HP Tractor, Serial #RW8430P030409;

7. John Deere Model 640F Combine Platform, Serial #1H0640FDED0755641 and 2014 M.D. Product, Inc., Model 7604 42' Transport;

8. John Deere Model 612C Non-Chopping Corn Head/Crockett, Serial #H0612CX730470;

9. John Deere Model 8130 Row Crop Tractor, Serial #RW8130P003174;

10. John Deere Model 9530 Crawler Tractor/Truck, Serial #RW9530T901009;

11. John Deere Model 1170 Planter, Serial #A01770E725531;

12. John Deere Model 333-D Compact Track Loader, Serial #1T0333DMCCD219390;

13. John Deere Model 1990 Drill, Serial #1A81990DCCF750140;

14. John Deere Model 640FD Hydraflex Draper Platform, Serial #1H0840FDAC0746559;

15. 2012 MDP 42' Stud King Header Transport MD42;

16. John Deere Model 4700 Self-Propelled Sprayer, Serial #N004700X000172;

17. 2012 M & D Model 5273 38' Header Trailer;

18. Bush Hog Model TD1500 Tri-Deck 15' Finishing Mower, Serial #12-00841;

19. 1983 John Deere Model 4850 Row Crop Tractor, Serial #RW4850P001219;

20. John Deere Model 6430 Utility Tractor, Serial #L06430A571392;

21. John Deere Model 8130 Row Crop Tractor, Serial #RW8130P026444;

22. John Deere Model 1990 Drill, Serial #1A01990730232;

23. John Deere Model 1990 Drill, Serial #1A81990DLBF745166;

24. John Deere Model 2210 Cultivator, Serial #1N02210SVC0750260;

25. John Deere Model 4730 Hicycle Sprayer, Serial #1N04730XED0024461;

26. John Deere Model 60G Compact Excavator, Serial #1FF060GXJCJ285006;

27. John Deere Model 2510 Applicator, Serial #1XF2510LPDD000023;

28. John Deere Model 1590 Drill, Serial #N01590X725743;

29. John Deere Model 1790 Planter, Serial #A01790C735525;

30. 2006 John Deere Model 1293 Combine Cornhead, Serial #H01293X716053;

31. 2008 John Deere Model 1770 Planter, Serial #A01770E730291;

32. 2009 John Deere Model 6430 Utility Tractor, Serial #L06430A605915;

33. 2009 John Deere Model 8530 Row Crop Tractor, Serial #RW8530D045188;

34. 2009 John Deere Model 8530 Row Crop Tractor, Serial #RW8530D045326;

35. 2009 John Deere Model 9870 Combine, Serial #H09870S731018;

36. 2010 John Deere Model 635 Combine Platform, Serial #H00630F736421;

37. 2010 John Deere Model 635 Combine Platform, Serial #H00635F738127;

38. 2010 John Deere Model 9870 Combine, Serial #1H09870SVA0736708;

39. 2010 John Deere Model 1790 Planter, Serial #A01790C735348;

40. 2011 John Deere Model 2210 Cultivator, Serial #1N02210XJB0740615;

41. 2011 John Deere Model DB60 Planter, Serial #1A0DB60YJBM740156;

42. 2011 John Deere Model 9430 4WD Tractor, Serial #1RW9430PCBP023249;

43. 2011 Unverferth Model 536 Transport, Serial #AQ527401141;

44. 2011 John Deere Model 706 Greenstar GPS Yield Mapping, Serial #PCG72UA307059;

45. 2011 John Deere Model 706 Greenstar GPS Yield Mapping, Serial #PCGU2UA308095;

46. 2011 John Deere Model 706 Greenstar GPS Yield Mapping, Serial #PCGU2A307640;

47. 2011 John Deere Model 706 Greenstar GPS Yield Mapping, Serial #PCGU2UA307157;

48. John Deere Model 0907 Greenstar GPS Yield Mapping, Serial #PCGT3TA310737;

49. John Deere Model 0907, Greenstar GPS Yield Mapping, Serial #PCGT3TA309736;

50. John Deere Model 0907 Greenstar GPS Yield Mapping, Serial #PCGT3TA308273;

51. John Deere Model 0907 Greenstar GPS Yield Mapping, Serial #PCGT3TA124316;

52. 2011 John Deere Model 0492 Greenstar GPS Yield Mapping, Serial #PC0492A103457;

53. 2011 John Deere Model 0492 Greenstar GPS Yield Mapping, Serial #PC00492A103458;

54. 2011 John Deere Model 0492 Greenstar GPS Yield Mapping, Serial #PC0492A103475;

55. 2011 John Deere Model 0492 Greenstar GPS Yield Mapping, Serial #PC0492A103291;

56. 2011 John Deere Model 0909 Greenstar GPS Yield Mapping, Serial #PC0909A107470;

57. John Deere Model 0909 Greenstar GPS Yield Mapping, Serial #PC0909A107034;

58. John Deere Model 0909 Greenstar GPS Yield Mapping, Serial #PC0909A107035;

59. John Deere Model 0909 Greenstar GPS Yield Mapping, Serial #PC0909A107033;

60. 2012 John Deere Model S680 Combine, Serial #1H0S680SAB0745165;

61. 2012 John Deere Model S680 Combine, Serial #1H0S680SAC0747659;

62. 2012 John Deere Model 328D Skid Steer Loader, Serial #1T0328DFEDB215645;

63. John Deere Model 333D Compact Track Loader, Serial #1T0333DKVCD238139;

64. 2013 John Deere Model 640 Combine Platform, Serial #1H0640FDHD0755640;

65. 2013 Frontier Model 1015 Rotary/Flail Cutter, Serial #1XFFM10XCC0000209;

66. 2012 John Deere Model 0499 AMS Autotrac System, Serial #PC0499A108794;

67. 2012 John Deere Model 0531 Greenstar Yield Mapping, Serial #PC053A102000;

68. 2013 John Deere Model 333E Compact Track Loader, Serial #1T0333EMPDE243184;

69. 2015 John Deere Model 1990 Drill, Serial #1A81990DJFH760335; and

70. 1994 Deere 7400 Row Crop Tractor, Serial #RW7400H002075.

17. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

PETER E. DEEGAN, JR.
United States Attorney

By: /s/ Jacob A. Schunk

JACOB A. SCHUNK
ANTHONY MORFITT
Assistant United States Attorneys

11

Case 6:18-cr-02034-CJW-MAR   Document 2   Filed 12/19/18   Page 11 of 11