IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN (WATERLOO) DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | No. 18-CR-2034-CJW |
| vs. | ) ) | |
| RANDY CONSTANT, | ) ) | GOVERNMENT'S BRIEF REGARDING SENTENCING |
| Defendant. | ) ) | |

The United States respectfully submits this memorandum regarding the sentencing for Randy Constant, scheduled for Friday, August 16, 2019. The memorandum addresses two issues: (1) a consideration of the offense and this defendant in light of the 18 U.S.C. § 3553(a) factors and (2) the appropriateness of a restitution award. The Final Presentence Investigation Report (PSR) entered on August 5, 2019, docket entry 28, did not identify any other issues other than a potential motion for a downward variance or downward departure. In the event such a motion is filed, the United States will file a response in accordance with the Court's scheduling order.

**I.     Defendant's Offense Warrants a Substantial Imprisonment Term**

In determining the particular sentence to be imposed, the Court is to consider, among other factors, (1) the nature and circumstances of the offense and the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment, and (2) the need for the sentence

imposed to afford adequate deterrence to the criminal conduct. *See* 18 U.S.C. § 3553(a).

## A. Nature, Circumstances, and Seriousness of the Offense and the Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment

Defendant's fraud scheme is one of the largest, if not the largest, organic fraud schemes in the history of the United States.

From 2010 to 2017 alone, defendant sold or caused the sale of more than $142 million in grain knowing that the vast majority of the grain was fraudulently labeled and marketed as organic. (PSR ¶ 6.) At least 90 percent of the grain sales, approximately $128 million, involved fraud in that the grain sold was either not grown under organic conditions or was commingled with non-organic grain, thereby depriving any organic grain of its organic character. (PSR ¶ 12.) And that number actually understates the financial magnitude of defendant's scheme, as defendant sold his grain to businesses that either resold the grain at an increased price or used the grain for feed or other products that were eventually sold to end users for an amount far exceeding what was paid to the defendant. (PSR ¶ 13.) In either event, the defrauded end purchasers of the defendant's fraudulently marketed organic grain paid considerably more, perhaps exponentially more, for fraudulent products than what is represented by the $128 million figure.

Not surprisingly given the scheme's magnitude, the defendant's offense caused significant and real harm. The majority of defendant's customers used the defendant's grain for livestock or poultry feed, resulting in thousands and

thousands of consumers paying premium prices for meat or poultry products that were falsely labeled as organic. But customers were not the only victims of the defendant's scheme. Legitimate, hard-working organic farmers who followed the rules, who did not use unapproved substances, and who did not purchase non-organic grain from third parties had to compete with the defendant for sales. These farmers, who did everything right, suffered financially by having to compete in an industry where the defendant, because he was lying and cheating, could sell more than $125 million in fraudulently marketed grain for lower prices than what legitimate farmers possibly could.

The breadth and extent of the scheme, the significance of the scheme relative to the industry, and the harm caused by the scheme all warrant a significant sentence of imprisonment.

### B. The Need to Afford Adequate Deterrence to the Criminal Conduct

To help ensure a fair marketplace for farmers doing things the right way and to give consumers confidence they are getting the products they are paying for, there must be significant consequences for growers who do things the wrong way, who lie and mislead at the expense of the industry, competitors, and the public. Such is the case here. A significant sentence is warranted to ensure that participants in the organic industry understand that, if they choose to lie or mislead regarding the nature of their operations, the consequences will be profound and the potential unlawful rewards are not worth the risk.

3

## II. The Appropriateness of a Restitution Order

Certain individuals or entities filed restitution claims against the defendant, alleging that they are entitled to restitution judgments against the defendant for their losses. Those claimants fall into two categories: (a) claimants who purchased fraudulently marketed grain from the defendant who subsequently sold the grain to third parties (victims 1 and 3) or (b) individuals or entities who did business with the defendant by either selling grain to the defendant or renting land to the defendant and who were allegedly not paid (victims 2, 4, 5, and 6).

For purposes of restitution, Congress defines a victim as a person who was "directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2). The statute does not permit a court to "award restitution to a single victim based on collective losses . . . [or to] award a victim restitution on behalf of other unidentified victims." *United States v. Engelmann*, 720 F.3d 1005, 1015 (8th Cir. 2013). Restitution awards also cannot be fashioned so as to result in a "windfall" to alleged victims. *United States v. Chalupnik*, 514 F.3d 748, 754 (8th Cir. 2008).

The United States is not asserting that entities or individuals in either category are victims for purposes of restitution in this case. It does not appear that the entities or individuals who rented land to the defendant or sold grain to the defendant were directly and proximately injured by the organic fraud scheme that is the subject of this prosecution. And awarding a restitution judgment to individuals or entities who purchased the defendant's grain <u>and subsequently resold</u>

4

it as organic would appear to place them in a better financial position than they otherwise would have held had they not purchased defendant's fraudulently marketed grain. That is because, in effect, they would be paid twice for the same grain.

Of note, the defendant will no longer be able to reap any financial benefits from his scheme. On June 24, 2019, in docket entry 27, this Court entered an order forfeiting as to the defendant a total of $128,191,128. Thus, to the extent the defendant has any financial resources, they will be depleted by action of that forfeiture judgment.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the defendant receive a substantial imprisonment term commensurate with the nature of his offense and the harms that resulted from it. The United States will respond to any motion for a variance or departure within the timelines allotted in the Court's rules.

Respectfully submitted,

PETER E. DEEGAN, JR.
United States Attorney

By */s/ Jacob A. Schunk*

JACOB A. SCHUNK
ANTHONY R. MORFITT
Assistant United States Attorney
111 7th Avenue SE, Box 1
Cedar Rapids, IA 52401-2101
(319) 363-6333
jacob.schunk@usdoj.gov

CERTIFICATE OF SERVICE

I certify that I electronically served a copy of the foregoing document to which this certificate is attached to the parties or attorneys of record, shown below, on August 9, 2019.

UNITED STATES ATTORNEY

BY: /s/ TVM

COPIES TO: Mark Weinhardt, Esq.
US Probation