IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN (WATERLOO) DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | No. 18-CR-2034-CJW |
| vs. | ) | |
| RANDY CONSTANT, | ) | |
| Defendant. | ) | |

## SENTENCING STIPULATIONS AND STATEMENT OF DEFENDANT

### SENTENCING STIPULATIONS

The United States and Defendant, Randy Constant, stipulate and agree as follows:

1. From 2010 to 2017, the organic fraud scheme involved more than $140,000,000 in sales. The grain involved in the scheme was typically sold to customers who would either use the grain for animal feed or sell it downstream for use in animal feed.

2. For 2016, sales from the scheme to the Defendant's buyers equaled approximately 7 percent of all organic corn grown (for grain or seed) in the United States, and approximately 8 percent of all organic soybeans grown in the United States, as reported in the Certified Organic Survey, 2016 Summary, which is Exhibit 3 to the Government's Sentencing Memorandum. (There is, however, the possibility that not all organic grain grown in the United States is shown in the Certified Organic Survey.)

{02068228.DOCX}

Government Exhibit 6 Case 18-CR-2034

Scanned with CamScanner

3. The scheme involved more than 11,500,000 bushels of grain during the 2010 to 2017 period.

4. At least one competitor lodged a complaint with the USDA regarding Defendant's sales. That competitor complained that grain sold by Constant was sold both (a) in quantities that exceeded what could be legitimately offered in the market and (b) for prices that were too low than what could be legitimately offered in the market.

_____
Randy Constant
DFENDANT

_____
Mark Weinhardt
ATTORNEY FOR RANDY CONSTANT

_____
Jacob Schunk
ATTORNEY FOR THE UNITED STATES

## STATEMENT OF DEFENDANT

I, Randy Constant, in response to inquiries from the Government, provide the following statement in regard to some of my expenses during the period of the organic fraud scheme:

1. During the period of the scheme, I invested millions of dollars in profits from the scheme into a fish business that employed multiple members of my family, including my son (COO), daughter (media director), and son-in-law (VP of

{02068228.DOCX}    2

sales). They each earned annual salaries between $60,000 and $100,000 from 2010 to 2017. The fish business also purchased an Escalade for one of the family members to use on official business. The business did not make a profit and ultimately collapsed.

2. During the scheme, from 2010 to 2015, I paid for annual family vacations that included my wife, three children, spouses, and grandchildren. The locations varied, although we would go to places like Hilton Head, South Carolina.

3. During the period of the scheme I resided in a house in Chillicothe, Missouri, which included approximately 1.5 acres of land. In 2019, I sold that house for approximately $350,000.

4. During the period of the scheme I took regular trips to Las Vegas. I went to Las Vegas for both personal and business reasons, and I estimate I took more than 20 trips during the 2010 to 2017 span. In addition to paying for my own flights, food, and hotel, I would also pay for the flights, food, and hotel for another individual who worked as part of the organic farming operation when he would accompany me on these trips. I estimate that he was with me on at least 8 of these trips. I supplied that individual with money for gambling as part of those trips – as much as $5,000 for a single trip. I also paid for my own gambling and for escort/sexual services on some of those trips.

5. During the course of my travel to Las Vegas, I developed sexual relationships with three women for whom I provided support and for whom I paid some expenses. In two instances I attempted to provide support in the form of

{02068228.DOCX} 3

Scanned with CamScanner

employment or contract relationships through which they would provide services to businesses of mine, although in reality the women did little of value in exchange. In total, over the course of the scheme, I transferred over $2,000,000 to entities related to these women and at least $225,000 of that total was in connection with the services they were supposed to provide. (The remainder constituted payments ultimately routed to grain suppliers as part of the organic scheme.) I also shared a bank account with one of these women from which, over a period of more than one year, approximately $110,000 was used to pay for her car payments and insurance, plastic surgery in the form of breast augmentation, travel to Spain, and other bills and expenses. During a roughly seven-month period in the course of the scheme, another account in my name and under my control incurred more than $250,000 in Las Vegas-related expenses.

_____
Randy Constant
DEFENDANT